## STATE, RESPONDENT, v. KINGSLY, APPELLANT.

APPEALABLE ORDER—*Motion in arrest of judgment.*—An order denying a motion in arrest of judgment is an appealable order under section 394 of the Criminal Practice Act, providing that, upon appeal, any decision of the court or intermediate order may be reviewed.

CONSTITUTIONAL LAW—*Prosecution by information.*—A conviction in a court of the State for a felony committed in the Territory prior to the adoption of the Constitution cannot be sustained where the prosecution was by information, as provided by the Constitution and the Act of March 2, 1891, relating thereto, as the provision of the federal Constitution guaranteeing to the accused the right to be prosecuted through the intervention of a grand jury, was, at the time of the commission of the offense, the supreme law of the land, and the substitution by the State Constitution of prosecution by information in place of that by indictment, not being a matter affecting the procedure, deprived the accused of a substantial right, and gave said act a retrospective operation. (*State* v. *Ah Jim,* 9 Mont. 167, cited.)

*Appeal from Third Judicial District, Deer Lodge County.*

The defendant was tried before DURFEE, J.

*Edward Scharnikow,* for Appellant.

" Prosecution by information is in derogation of the common law, and a departure from the general policy of the law, and for that reason statutes providing for it which are in opposition to long settled policy must be strictly construed." (10 Am. & Eng. Encycl. of Law, p. 456; *State* v. *Boswell,* 104 Ind. 545.)

" The rule for the construction of penal statutes is that they are to reach no further than their words; no person can be made subject to them by implication; and all doubts concerning their interpretation are to preponderate in favor of the accused." (Bishop on Statutory Crimes, § 104.) The right of a party charged with a crime to have his case submitted to a grand jury for its action and determination, was as sacred under the principles of common law as was the right of trial by jury.

The finding of an indictment is a judicial act, differing from filing an information which is merely a ministerial act. The latter is but the mere formulation of the pleadings in a case, while the former is a *quasi* judicial investigation that has been inviolate as a legal right for centuries. (*Ex parte Sternes,* 32 Cal. 247.) A legal right is one sanctioned by the government; it is a claim which can be enforced by legal means against the

persons or the community whose duty it is to respect it, and is therefore a substantial right. Legal rights are derived and have origin from positive law, either statute or common. The Constitution of the United States is the fundamental law, and the supreme law of the land; and the judges in every State shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding. (Art. vi. Const. U. S.)

The accused was, at the time the offense alleged was committed, a resident of the *Territory* of Montana, and guaranteed all the rights and protections declared in the Constitution of the United States. This was the fundamental law from which the rights of the people of the Territory were derived, and which they retained as to all acts done while residents of the Territory. Nor could a single right be taken away by the advent of statehood with its new Constitution and laws made under it. An act that operates retrospectively as to any offense is as much void when enacted by the people in their primary capacity as makers of the fundamental law, as when enacted in the form of statutes through the delegated power of their legislatures. (*Cummings* v. *Missouri*, 4 Wall. 277; Cooley's Constitutional Limitations [5th ed.], 42.) Nor can the fact that the Constitution containing such a provision was submitted to Congress, and the State admitted to full rights in the Union under it, make such provision valid. (*Gunn* v. *Barry*, 15 Wall. 610.)

"No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury," etc. (Const. U. S. Amend. 5.) This constitutional and fundamental right is of the highest of legal rights guaranteed to all. The accused was entitled to this United States constitutional guaranty of presentment by grand jury on November 1, 1889, the time of the commission of the alleged offense. Having the right at that time, it could not be taken away. The right to be presented by a grand jury is not a mere change in the proceedings of a court, which does not affect the substantial rights of the accused, and to which he cannot object. It is a constitutional guaranty, which rests upon a basis more secure than acts of the legislature which relate to mere matters of procedure. (*McCarty* v. *State*, Wash. Nov. 18, 1890; *People* v. *Tisdale*, 57 Cal. 107.)

The Constitution of the State of Montana by act of Congress, as well as by its own terms, did not become operative until November 8, 1889. Article iii., section 8, provides for proceedings by information. The act of the legislature authorizing proceedings by information was passed March 2, 1891. This act in relation to offenses which previously could only be prosecuted by indictment, when applied to any offense committed before its adoption, operates retrospectively, and is therefore *ex post facto* and void as to that offense. A constitution should operate prospectively only, unless the words employed show a clear intention that it should have a retrospective effect. (Cooley's Constitutional Limitations, 76; Segwick's Statutory and Constitutional Law [2d ed.], 166.) There is nothing in the Constitution of Montana showing that it was to act retrospectively, or that it took away any rights guaranteed to the individual before the admission of Montana into the Union. On the contrary (sec. xx. Schedule, § 1), recites that all territorial laws shall be the laws of the State, etc.; and (sec. xx. Schedule, § 9) "all . . . . *defenses, claims,* and *rights* of individuals . . . . existing at the time the State shall be admitted into the Union, shall continue and be respectively executed, proceeded with, determined, enforced, and *protected* under the laws of the State."

A law dispensing with any of those substantial protections, with which the existing laws surround a person accused of crime, and takes away any material right of the accused that existed at the time of the commission of the imputed offense, is *ex post facto.* (*Kring* v. *Missouri,* 107 U. S. 221; note, 45 Am. Rep. 541; *United States* v. *Hall,* 2 Wash. C. C. 366; *Calder* v. *Bull,* 3 Dall. 386; *Moore* v. *State,* 14 Vroom, 203; 39 Am. Rep. 558; *Lindzey* v. *State,* 65 Miss. 542; 7 Am. St. Rep. 674; *Garvey* v. *People,* 6 Colo. 559; 45 Am. Rep. 531; *Hurtato* v. *California,* 110 U. S. 534; *In re Medley,* 134 U. S. 160; *Marion* v. *State,* 20 Neb. 233; 57 Am. Rep. 825.) In *People* v. *Campbell,* 59 Cal. 243; 43 Am. Rep. 257, the court seems to have rendered its decision, relying principally upon the rule that "there is no such thing as a vested right in any particular remedy." But this rule is subject to the exception, where the remedy is part of the right itself. (Cooley's Constitutional Limitations [5th ed.], 444.)

The adoption of the rule that the change of remedies or modes of procedure cannot be *ex post facto* is also erroneous. (Sutherland's Stat. Constr. § 467, p. 606.) This construction seems to have arisen in following the case often cited (*Calder* v. *Bull, supra*), by considering the four classes therein defined, to the exclusion of any other. This should not be, as the court in that decision adds: "All these and *similar* laws are manifestly unjust and oppressive." This is pointed out in *Kring* v. *Missouri, supra.*

"No one can be criminally punished in this country, except according to a law prescribed for his government by the sovereign authority *before* the imputed offense was committed, and which existed as a law *at the time.*" (*Hartung* v. *People*, 22 N. Y. 95.)

"The legislature may abolish courts and create new ones, and it may prescribe altogether different modes of procedure in its discretion, though it *cannot lawfully*, we think, in so doing, *dispense* with *any* of those substantial protections with which the *existing* law surrounds the person accused of crime." (Cooley's Constitutional Limitations, 330; Bishop's Criminal Procedure, § 115; *State* v. *Ah Jim*, 9 Mont. 167.)

*Henri J. Haskell*, Attorney-General, and *W. S. Shaw*, County Attorney, for the State, Respondent.

The order denying defendant's motion in arrest of judgment is not appealable. (§ 394, p. 476, Comp. Stats.; *People* v. *Markham*, 64 Cal. 163; 49 Am. Rep. 700; *People* v. *Majors*, 65 Cal. 101; 52 Am. Rep. 295.) The defendant in criminal cases can appeal only from a judgment. (*United States* v. *Smith*, 2 Mont. 488; *Territory* v. *Rehberg*, 6 Mont. 469.) The State contends that in the matter of prosecution of persons charged with the commission of a crime by information or indictment, the person charged has no vested right in the mode of procedure. (*Sharp* v. *Contra Costa Co.* 34 Cal. 284; *People* v. *Mortimer*, 46 Cal. 118; *People* v. *Campbell*, 59 Cal. 244–247; 43 Am. Rep. 257; *Calder* v. *Bull*, 3 Dall. 386; Cooley's Constitutional Limitations, p. 331; Bishop on Statutory Crimes, p. 178; *Springfield* v. *Hampden Commrs. of Highways*, 6 Pick. 503; *Marion* v.

*State,* 20 Neb. 248; 57 Am. Rep. 825; 1 Bishop's Criminal
Procedure, § 115.)

In *People* v. *Tisdale,* 57 Cal. 107, cited by the appellant,
"the real and only question was, whether an information pre-
sented after the repeal of a law, which required that a person
who violated it should be proceeded against by indictment, can
be sustained for an offense committed before the repeal." In
that case the court held, that a general provision of the law
which declared that "the repeal of any law creating offense
does not constitute a bar to the indictment and punishment of
an act already committed in violation of the law so repealed,
unless the intention to bar such indictment and punishment is
expressly declared in the repealing act," could not be so con-
strued that "the legislature also meant that the repeal of any
law creating a criminal offense should not constitute a bar to a
proceeding by information against a person who had violated
such law before it was repealed."

The defendant's contention in his brief is to the effect that the
act under which this proceeding is had will operate retrospect-
ively, *provided,* that this proceeding by information in such
cases is upheld by this court, and therefore an *ex post facto* law.
The State insists that this law merely changes the mode of pro-
cedure in criminal actions, and is not within the category of *ex
post facto* law. (*People* v. *Mortimer,* 46 Cal. 118; *Calder* v.
*Bull,* 3 Dall. 386; *People* v. *Campbell,* 59 Cal. 246; 43 Am.
Rep. 257; *Marion* v. *State,* 20 Neb. 250; 57 Am. Rep. 825.)
The procedure in a cause, whether civil or criminal, pertains to
the remedy. In respect of past transactions, therefore, the
same as of future ones, it may be changed from time to time,
at the legislative pleasure. (*Lore* v. *State,* 4 Ala. 173; *Hale* v.
*State,* 15 Conn. 245; *People* v. *Phelps,* 5 Wend. 19; *People* v.
*Supervisors,* 70 N. Y. 237.)

BLAKE, C. J.—The appellant was convicted of the crime
of grand larceny in March, 1891, and judgment was entered
upon the verdict. The information was filed March 23, 1891,
by the county attorney of the county of Deer Lodge, and
alleged that the offense was committed September 20, 1889. A
plea of not guilty was entered, and it is conceded that the ver-

dict was supported by the evidence. The appellant moved to arrest the judgment upon the following grounds: That the county attorney had no authority to file the information; that the court had no jurisdiction to try the alleged offense by information; that there was no authority for the proceeding by information; and that the information did not state facts sufficient to constitute a public offense. The motion was overruled, and this appeal has been taken from the action of the court below and the judgment.

A motion in arrest of judgment in a criminal action "may be granted by the court for either of the following causes: *First,* that the grand jury who found the indictment had no legal authority to inquire into the offense charged, by reason of it not being within the jurisdiction of the court; *second,* that the facts stated do not constitute a public offense." (Comp. Stats. div. 3, § 357.) The act "relating to informations in criminal cases," approved March 2, 1891, provides that all laws which are applicable to prosecutions upon indictments, and "to motions, demurrers, amendments, pleadings, trials, penalties, and punishments, the passing or the execution of any sentence, appeals, and to all other proceedings in cases of indictment, whether in the court of original or appellate jurisdiction, shall, in the same manner, and to the same extent and effect, as near as may be, apply to prosecutions by information, and to all proceedings therein, the same as if prosecuted by indictment." (§ 4.) The Criminal Practice Act contains this section: "A defendant who has failed to demur to an indictment for any of the defects appearing upon its face shall be deemed to have waived the same, except the defects that the court has no jurisdiction over the same, or that the indictment does not state facts sufficient to constitute an offense. These he may take advantage of on the trial, or on motion to arrest judgment." (§ 217.) It is further provided: "An appeal to the Supreme Court may be taken by the defendant, as a matter of right, from any judgment against him, and, upon appeal, any decision of the court or intermediate order made in the progress of the case may be reviewed." (§ 394.)

The contention on behalf of the State is that the order of the court in denying the motion in arrest of the judgment is not

appealable, and this position is fortified by the following authorities: *People* v. *Markham*, 64 Cal. 157; 49 Am. Rep. 200; *People* v. *Majors*, 65 Cal. 100; 52 Am. Rep. 295; *People* v. *Henry*, 77 Cal. 445; *People* v. *Cline*, 83 Cal. 374.   There is a material distinction respecting this matter between the statutes of this State and those of California, which destroys the weight of these cases.   In *Territory* v. *Duncan*, 5 Mont. 478, Chief Justice Wade, in the opinion, said: "There was a motion in arrest of judgment, . . . . which was overruled, and judgment entered upon the verdict, from which the defendant appeals to this court.   This appeal properly brings the indictment here for review.   The indictment must at all times support the judgment, and the question whether it does or not may be raised in this court for the first time."   This is a sound interpretation of the statutes *supra*, and the decision of the court upon the motion is properly before us.

Was the prosecution of the appellant by information in accordance with the law?   The offense of which he has been convicted was committed during the existence of the Territory of Montana.   This political organization was created by an act of Congress, approved May 26, 1864, and continued until November 8, 1889, when the government of the State was established.   The sixth section of its Organic Act provided "that the legislative power of the Territory shall extend to all rightful subjects of legislation, consistent with the Constitution of the United States and provisions of this act."   The fifth article of the amendments to that Constitution declares that "no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury." Subject to this limitation the legislative assembly possessed and exercised the power to define offenses against persons and property, and regulate the trial of the parties who might be accused of unlawful conduct; but any statute which required prosecutions for a capital or infamous crime to be made by informations instead of indictments would have been without validity. If, therefore, the appellant had been arrested at the time of the commission of this offense, he could have been held to answer only "on a presentment or indictment of a grand jury."   This was then "the supreme law of the land."

How was this right of the appellant affected by the government of the State of Montana? The following provisions of the Constitution should be weighed: "All criminal actions in the District Court . . . . shall be prosecuted by information after examination and commitment by a magistrate, or after leave granted by the court, or shall be prosecuted by indictment without such examination or commitment, or without such leave of the court." (Art. iii. § 8.) "No *ex post facto* law . . . . shall be passed by the legislative assembly." (Art. iii. § 11.) "No person shall be deprived of life, liberty, or property without due process of law." (Art. iii. § 27.) "The style of all process shall be, 'The State of Montana,' and all prosecutions shall be conducted in the name and by the authority of the same." (Art. viii. § 27.) "All laws enacted by the legislative assembly of the Territory of Montana, and in force at the time the State shall be admitted into the Union, and not inconsistent with this Constitution or the Constitution or laws of the United States of America, shall be and remain in full force as the laws of the State until altered or repealed, or until they expire by their own limitation." (Art. xx. Schedule, § 1.) "No crime or criminal offense committed against the laws of the Territory of Montana shall abate, or be in any wise affected, by reason of the change from a territorial to a State form of government; but the same shall be deemed and taken to be an offense against the laws of the State, and the appropriate courts of the State shall have jurisdiction over and to hear and determine the same." (Art. xx. § 3.) "Parties who, at the time of the admission of the State into the Union, may be confined under lawful commitments, or otherwise lawfully held for alleged violations of any of the criminal laws of the Territory of Montana, shall continue to be so confined or held until discharged therefrom by the proper courts of the State." (Art. xx. § 8.) "All writs, processes, prosecutions, actions, causes of actions, defenses, claims, and rights of individuals, associations, and bodies corporate, existing at the time the State shall be admitted into the Union, shall continue and be respectively executed, proceeded with, determined, enforced, and protected under the laws of the State." (Art. xx. § 9.)

The Constitution of the United States and the Territory of

Montana guaranteed by appropriate legislation the right of the appellant to be prosecuted for the offense charged against him through the intervention of a grand jury. The State, in pursuance of the power which has been conferred by the Constitution, has authorized by the act *supra* the proceeding by information in a case of this degree. The effect of similar statutes was determined by the Supreme Court of California in *People* v. *Campbell*, 59 Cal. 243 ; 43 Am. Rep. 257. It appeared that Campbell committed the crime of manslaughter in August, 1879, when the Constitution declared that "no person shall be held to answer for a capital or otherwise infamous crime . . . . unless on presentment or indictment of a grand jury." The new Constitution, which was in force January 1, 1880, provided for the prosecution of offenses by information, and the legislature passed, April 9, 1880, an act to carry the same into effect. Chief Justice Morrison, in the opinion, said: "The claim on behalf of the defendant is that neither the Constitution nor the act of the legislature is applicable to the present case, because, as has already been remarked, the homicide was committed in the year 1879." The conclusion of the court is stated in the following sentences : "On principle and authority, we think there can be no objection to the new remedy prescribed by the Constitution and the act of the legislature. It was as competent to introduce the prosecution by information, and to make the same applicable to past offenses, as it was to establish a new *forum* in which prosecutions for past offenses should take place. . . . . We are therefore of opinion that the case is one in which an information was a proper mode of prosecution." Three justices, Myrick, Ross, and McKee, concurred, and three justices, Sharpstein, McKinstry, and Thornton, dissented. This is the leading case upon the important question to be decided in this appeal, and the reasons must be critically compared and analyzed. The main proposition of the majority of the court is that prosecutions by indictment or information relate wholly to the mode of procedure, which is a creature of the legislative will. We will repeat some of the citations: Chief Justice Parker, in *Springfield* v. *Commissioners*, 6 Pick. 508, said: "But there is no such thing as a vested right to a particular remedy. The legislature may always alter the form

of administering right and justice, and may transfer jurisdiction from one tribunal to another." Mr. Bishop, in his work on Statutory Crimes, says: "There is no vested right in any particular remedy." (2d ed. § 178.) The court, in *People* v. *Mortimer,* 46 Cal. 118, said: "But laws changing the mere forms of procedure in a criminal action are not within this category;" and it was held that a statute which modified the rule, and prescribed the order in which counsel for the State should address the jury, was applicable to offenses which were perpetrated before the Penal Code took effect. The following language of Judge Cooley in his work on Constitutional Limitations is also relied on in *People* v. *Campbell, supra:* "But, so far as mere modes of procedure are concerned, a party has no more right in a criminal action than in a civil action to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place. Remedies must always be under the control of the legislature, and it would create endless confusion in legal proceedings if every case was to be conducted only in accordance with the rules of practice, and heard only by the courts, in existence when its facts arose. The legislature may abolish courts, and create new ones, and it may prescribe altogether different modes of procedure, in its discretion, though it cannot lawfully, we think, in so doing, dispense with any of those substantial protections with which the existing law surrounds the person accused of crime. Statutes giving the government additional challenges, and others which authorized the amendment of indictments, have been sustained and applied to past transactions, as doubtless would be any similar statute calculated merely to improve the remedy, and its operation working no injustice to the defendant, and depriving him of no substantial right." (5th ed. p. 329, and notes.) None of the precedents which support the text of this learned author is on all fours with the case at bar, and we do not question them, or the doctrine which is applied to the facts in *People* v. *Mortimer, supra.*

But the minority of the court in *People* v. *Campbell, supra,* maintains, in the dissenting opinion of Mr. Justice Sharpstein, that the provisions of the old Constitution respecting the presentment or indictment of a grand jury "was one of the sub-

stantial protections with which that instrument surrounded persons accused of crime;" and that "a presentment or indictment of a grand jury was not a mere mode of procedure which the legislature might in its discretion dispense with or change." No cases are cited to uphold these views. It should be observed that after the publication of the report of the case of *People* v. *Campbell, supra,* the Supreme Court of the United States investigated kindred subjects, and we enjoy the great benefits of its profound and exhaustive discussions in *Kring* v. *Missouri,* 107 U. S. 221; *Hopt* v. *Utah,* 110 U. S. 574; *Hurtado* v. *People,* 110 U. S. 516; *In re Medley,* 134 U. S. 160; *Holden* v. *Minnesota,* 137 U. S. 483; and *Cook* v. *United States,* 138 U. S. 157.

The investigation by a grand jury of a capital or infamous crime of which a party may be accused has been regarded for centuries as a bulwark of personal liberty. It has been treated in many volumes as a vital substance, and the history of the foregoing amendment to the federal Constitution deserves thoughtful consideration. Judge Story, in his work on the Constitution, says: "But although this provision of a trial by jury in criminal cases is thus constitutionally preserved to all citizens, the jealousies and alarms of the opponents of the Constitution were not quieted. They insisted that a bill of rights was indispensable upon other subjects, and that upon this further auxiliary rights ought to have been secured. These objections found their way into the State conventions, and were urged with great zeal against the Constitution. They did not, however, prevent the adoption of that instrument; but they produced such a strong effect upon the public mind that Congress, immediately after their first meeting, proposed certain amendments embracing all the suggestions which appeared of most force; and these amendments were ratified by the several States, and are now become a part of the Constitution." (§ 1782.) The eminent author reviews the duties of this body, and concludes: "From this summary statement it is obvious that the grand jury perform most important public functions, and are a great security to the citizens against vindictive prosecutions, either by the government, or by political partisans, or by private enemies." (§ 1785.)

Chancellor Kent, in his Commentaries, says: "The right of personal security is guarded by provisions which have been transcribed into the constitutions in this country from Magna Charta, and other fundamental acts of the British parliament, and it is enforced by additional and more precise injunctions." (Vol. 2 [12th ed.], p. 11.) This amendment to the Constitution is then mentioned.

Chief Justice Shaw, in *Commonw.* v. *Holley*, 3 Gray, 459, said: "The object of the declaration of rights was to secure substantial privileges and benefits to parties criminally charged, not to require particular forms, except where they are necessary to the purposes of justice and fair dealing towards persons accused, so as to insure a full and fair trial. . . . . The great principle asserted by the declaration of rights is that no man shall be put to answer a criminal charge until the criminating evidence has been laid before a grand jury, and they have found probable cause, at least, to believe the facts true on which the criminality depends." These assertions concerning the ancient institution of the grand jury, which can be reiterated, show that this has always been one of the grand rights of freemen. The formalities which are its incidents can be amended, but the fundamental privilege which has been declared and protected by the articles of the Constitution cannot be disregarded. In *State* v. *Ah Jim*, 9 Mont. 167, this court held that a party could be prosecuted by an indictment which had been found by a grand jury of seven persons, although the alleged offense was committed within the Territory of Montana, when the statute fixed a higher number, and that the substantial rights of the accused were not thereby impaired, and that this ruling, in its consequences, was not *ex post facto.* The majority of the court in *People* v. *Campbell, supra,* have in our judgment misapplied the authorities on which they relied, and arrived at an erroneous decision in holding the matter one of mere procedure. The prosecution of the appellant by an information gives to the act, *supra,* of the State a retrospective operation.

The Supreme Court of Washington, in *McCarty* v. *State,* 1 Wash. St. 377, decided under the same conditions in accordance with our deductions, but, upon a petition for a rehearing, the following opinion was delivered by Mr. Justice Dunbar: "The

petition for rehearing in this case is not allowed; but the court desires to say that in view of the public importance of some of the questions raised, and in view of the fact that the case was submitted without oral argument on the part of the State, in cases arising hereafter, it will not be bound by the opinion rendered in this case on the constitutional questions involved." We confess that the reasons given in the opinion for its action are peculiar and unsatisfactory, but the case cannot be cited as an authority.

It is therefore ordered and adjudged that the judgment be reversed, and that the cause be remanded, with directions to grant the motion in arrest of the judgment.

HARWOOD, J., and DE WITT, J., concur.