[No. 185. Decided July 14, 1891.]

JOHN G. LYBARGER v. THE STATE OF WASHINGTON.

CONSTITUTIONAL LAW — EX POST FACTO LAW — INFORMATION —
SEPARATION OF JURY — WEIGHT OF TESTIMONY.

A law changing the mode of procedure in prosecutions for crime from an indictment to an information, does not contain any of the elements, or respond to any of the accepted definitions of an *ex post facto* law, although the offense under prosecution may have been committed prior to such change in the law.

Under Code 1881, § 278, providing that misconduct of the jury shall be shown by affidavit on motion for new trial, the miscon-

duct of the jury in separating and each going his own way without the custody of the court, must be shown by affidavit where the record is silent as to whether such separation was by consent of the parties, otherwise it will not be considered by the supreme court on appeal. (ANDERS, C. J., and SCOTT, J., dissent.)

Where there is sufficient evidence to sustain the verdict of the jury, the supreme court will not pass upon the weight of testimony.

The supreme court will, on suggestion of a diminution of the record of a case before the court, order the record supplied; but after appellant has rested his case on certain points of the record, he will not be granted a rehearing upon an amended record. (Opinion on rehearing.)

*Appeal from Superior Court, Thurston County.*

Information against John G. Lybarger for the crime of seduction. The crime was committed in the year 1889, prior to the admission of Washington Territory to statehood. The information was filed in the year 1890, and defendant was tried and convicted thereunder, whereupon he appealed to this court.

*Marshall K. Snell,* for appellant.

*W. C. Jones,* Attorney-General, and *Chas. H. Ayer,* Prosecuting Attorney, for The State.

The opinion of the court was delivered by

DUNBAR, J.—The record in this case shows that on the 22d day of July, 1890, the state's attorney, W. A. Reynolds, filed a complaint with John G. Sparks, a justice of the peace for Thurston county, State of Washington, charging appellant with the crime of seduction; whereupon appellant, being brought before the court, waived examination, and entered into a recognizance for his appearance at the superior court; that thereafter, on the 6th day of October, 1890, the said W. A. Reynolds, prosecuting attorney for Thurston county, made and filed with the superior court of Thurston county, State of Washington, an information charging appellant with having on the 10th day of

January, 1889, in the county of Thurston, Washington, seduced one Elsie Patnude, etc.; that thereafter, and on October 7, 1890, appellant was arraigned and required to plead to said information, and did plead not guilty thereto; that thereafter a trial was had, in which, on October 10, 1890, a verdict was rendered purporting to find appellant guilty of the crime of seduction; and thereafter a motion in arrest of judgment and a motion for a new trial were made, and denied by the court, and on October 24, 1890, a judgment and sentence were rendered by said court, purporting to adjudge appellant guilty of the crime of seduction, and that he be punished therefor by imprisonment in the state penitentiary at Walla Walla, in said state, at hard labor, for the period of four years, and that he pay the costs of prosecution, and committing him to the custody of the sheriff of Thurston county to carry such judgment into execution—all of which proceedings upon such trial, and up to and including the entry of judgment and sentence, are fully stated and made a part of the record of said superior court in such proceeding by its statement of facts, evidence and charge of the court as filed in this court; that at the time of entry of said judgment notice of appeal was given in open court, and a *supersedeas* granted by the court; that thereafter, and on the 13th day of March, appellant served notice of appeal, appealing from said judgment and sentence, and each and every part thereof, which notice of appeal is duly entered of record and filed in this court. The following grounds are relied upon by appellant for the reversal of this judgment: (1) Illegality of proceedings by information for a crime committed prior to the adoption of the constitution of the state; (2) misconduct of the jury; (3) insufficiency of evidence; (4) error of trial court.

As to the first proposition it is urged—(1) That the proceeding by information was illegal; (2) that an indictment

was necessary to jurisdiction and a valid judgment; (3) that the court will look into the record to ascertain whether there was jurisdiction. During our territorial existence there was no question but that the defendant would have had a right to a presentment by a grand jury, and this crime was alleged to have been committed before the adoption of the constitution and the admission of the state into the union. Section 25, art. 1 of the constitution of the State of Washington provides that "offenses heretofore required to be prosecuted by indictment may be prosecuted by information, or by indictment, as shall be prescribed by law." Section 26, art. 1 of the constitution says:

"No grand jury shall be drawn or summoned in any county, except the superior judge thereof shall so order."

Some of the questions involved here are exceedingly interesting, and this court has at least undertaken to give them a painstaking examination, and the conclusion reached from that investigation is, that the law changing the mode of procedure from an indictment to an information does not contain any of the elements, or respond to any of the accepted definitions, of an *ex post facto* law; and that it is not in violation of any guaranty by the federal constitution. The dissenting opinion of Justice HARLAN in *Hurtado v. People*, 110 U. S. 516 (4 Sup. Ct. Rep. 111, 292), cited by appellant, is a learned and highly interesting dissertation on the origin, history and benefits of a grand jury; but the reasoning of the learned judge does not appeal to our minds as strongly as does that of the majority opinion, which holds, upon well sustained reasoning, and by an overwhelming weight of authority, that a conviction upon an information for murder in the first degree, and a sentence of death thereon, are not illegal by virtue of the clause in the fourteenth amendment to the constitution of the United States, which prohibits the states from depriving any person of life or property without due process of

law. The application of the fifth amendment to the constitution of the United States to this question has been so distinctly settled that it seems to us that an extended discussion would not be justified. In *Barron v. Mayor and City Council of Baltimore*, 7 Pet. 243, Chief Justice MARSHALL, in discussing the fifth and sixth amendments, after a thorough review of the question, says:

"These amendments contain no expression indicating an intention to apply them to the state governments. This court cannot so apply them."

And in *Twitchell v. Com.*, 7 Wall. 324, the chief justice of the supreme court of the United States, in an opinion concurred in by the full bench, says: "But the scope and application of these amendments are no longer subjects of discussion;" and, quoting the opinion of Chief Justice MARSHALL, just above cited, says: "And this judgment has since been frequently reiterated, and always without dissent." From an investigation of all the cases cited we are compelled to conclude that an indictment by a grand jury is neither a constitutional right, nor a substantial right of any kind, but that it is simply a procedure, and as such it is within the power of the legislature to change or abolish it. No right of defense is taken from the defendant in this action that he had at the time of the commission of the crime. He is entitled now, as he was then, to be tried by a jury of his peers; to be heard by himself or counsel; to meet the witnesses face to face; to have the same length of time to prepare for trial. It takes the same weight of testimony now as it did then to convict. He is entitled to the same presumptions. The penalty for the crime remains the same. No right has been abridged, no avenue of escape closed up, which was open to him before. It was not in the grand jury room that he could make any defense before. That room presented to him a closed door. The presentation through the grand jury is

simply a mode of procedure by which the defendant is brought formally before the trial court. The state can prescribe another mode, as it has, by information filed by the prosecuting attorney. These are questions that cannot substantially concern the defendant. They are preliminary proceedings — mere modes of attainment or forms of procedure. There is no fundamental right of the defendant affected by one of these modes any more than by the other. No one has any vested interest in either of these modes of procedure. Through the instrumentality of either, the defendant is charged with crime, and put upon his defense; and, if these preliminary steps have been taken according to law, and he has had a fair trial in a court of justice according to the modes of proceeding applicable to such a case, he cannot be heard to complain.

As to the question whether or not the law now in force in relation to informations as applied to this crime is an *ex post facto* law, we will quote and abide by the classified definition of Justice CHASE in *Calder v. Bull,* 3 Dall. 386, quoted afterwards by the supreme court of the United States with approval, and which has been generally accepted by the courts as a comprehensive and correct definition, which is as follows:

"(1) Every law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action; (2) every law that aggravates a crime, or makes it greater than it was when committed; (3) every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime when committed; (4) every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the time of the commission of the offense in order to convict the offender."

Measured by this standard, the law in question cannot be said to be *ex post facto* in its effect. If so, under what classification does it fall? We cannot agree with the ap-

pellant that either anything decided or any *dictum* in the case of *Kring v. State*, 107 U. S. 221 (2 Sup. Ct. Rep. 443), supports his contention in this case. What was held in that case was that "within the meaning of the constitution any law is *ex post facto* which is enacted after the offense was committed, and which, in relation to it or its consequences, alters the situation of accused to his disadvantage." Kring had been indicted for murder in the first degree. He had been tried four times, and convicted once on a plea of guilty of murder in the second degree, and was sentenced to imprisonment in the penitentiary for twenty-five years. He took an appeal from the judgment on the ground that he had had an understanding with the prosecuting attorney that if he would plead as he did his sentence should not exceed ten years' imprisonment. The judgment was reversed by the supreme court, and when the case came on for trial again he refused to withdraw his plea of murder in the second degree, and refused to renew his plea of not guilty, which had been withdrawn when he pleaded murder in the second degree. The court then, against his remonstrance, made an order setting aside his plea of guilty of murder in the second degree, and directing a general plea of not guilty to be entered. On this plea he was tried, found guilty, and sentenced to death, and the judgment was affirmed by the supreme court of the State of Missouri. It was conceded in that case that, at the time of the commission of the crime, in the State of Missouri, under the law, the acceptance by the prosecuting attorney and the court of the plea of murder in the second degree to an indictment of murder in the first degree, and the conviction and sentence of the defendant under it of murder in the second degree, was an acquittal of the charge of murder in the first degree, and that he could not be tried again for that offense; but the state court overruled this defense on the ground that by

§ 23 of article 2 of the constitution of Missouri, which
took effect after the commission of the crime by Kring,
the former law was abrogated, and that he could be tried
for murder in the first degree notwithstanding his convic-
tion and sentence for murder in the second degree; and the
supreme court of the United States by a divided court held
that the article in the new constitution was an *ex post facto*
law. But in that case a perfect defense to the crime of
murder in the first degree which existed at the time of the
commission of the crime was taken away by the new law;
a defense, at least, which the defendant could avail himself
of by the consent of the court, and a defense which he had
availed himself of by such consent at his former trial.
And well the court said:

"Whatever may be the essential nature of the change,
it is one which, to the defendant, involves the difference be-
tween life and death."

And again says the court:

"The question here is, does it deprive the defendant of
any right of defense which the law gave him when the act
was committed, so that as to that offense it is *ex post
facto?*" "In that case," said the court, "the constitution
of Missouri so changes the rule of evidence that what was
conclusive evidence of innocence of the higher grade of
murder when the crime was committed, namely, a judicial
conviction for a lower grade of homicide, is not received as
evidence at all, or, if received, is given no weight in behalf
of the offender. It also changes the punishment, for,
whereas the law as it stood when the homicide was com-
mitted was, that when convicted of murder in the second
degree he could never be tried or punished by death for
murder in the first degree, the new law enacts that he may
be so punished, notwithstanding the former conviction."

But it is certainly difficult to see the application of this
reasoning to the case at bar. It is true, as urged by appel-
lant, that § 1000 of the Code of Washington provides that
"when an indictment indorsed 'not a true bill' has been

presented in court and filed, the effect thereof is to dismiss the charge, and the same cannot be submitted to or inquired of by the grand jury unless the court so orders." But this section is evidently not intended to confer any right upon the defendant, but simply to expedite the business of the court, subject to the direction of the court. In order to make it avail the defendant, it must be presumed —(1) that the grand jury would have returned "not a true bill;" and, (2) that after they had done so, the court would not have allowed the charge to be submitted to another grand jury. Such presumptions can hardly be indulged in favor of defendants who seek to escape from a trial upon the merits. No one can or should question the right of the defendant to be tried by the law in force when the crime was committed. This is a principle that is founded in natural justice, that is warranted by the wisdom of ages, and guaranteed by our constitution; but, while the defendant must be protected in every substantial right, the rule must not be so narrowly construed as to defeat the ends of justice, or hamper or retard progress by preventing the enactment of laws governing questions of procedure which experience teaches us should be enacted; but the limitation must be construed as affecting the rights of parties, as distinguished from such as merely change the remedies by which those rights are to be enforced. In this case we cannot see that the condition of the defendant is changed for the worse. The law complained of makes no new offense. It gives no new definition to the crime he is charged with. It does not increase the punishment for the commission of the crime. It does not change the rules of evidence to make conviction more easy. None of his rights are interfered with. Upon his arraignment he stands in exactly the same position with reference to his trial, and the probabilities of his acquittal or conviction, that he did when the old law was in force. The state has simply

changed its procedure. Of this he cannot be heard to complain, for, as is said by Mr. Cooley in his Constitutional Limitations, page 329:

"So far as mere modes of procedure are concerned, a party has no more right in a criminal than in a civil action to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place. Remedies must always be under the control of the legislature, and it would create endless confusion in legal proceedings if every case was to be conducted only in accordance with the rules of practice, and heard only by the courts in existence when its facts arose."

So far as the retroactive or retrospective quality of the law is concerned, it is not retroactive in any sense that can injure the defendant, or in any constitutional sense. In all retroactive laws there must be an element of surprise, by which the persons whose rights are affected are taken unawares, and are called upon to act in a manner different from what they had been led by the previous state of the law to anticipate. Wade, Retroactive Laws, § 34. It is unnecessary to repeat that the defendant's case does not fall within the scope of this definition. The only limit imposed upon the legislative power of the states in reference to the passage of retroactive laws by the constitution of the United States is, that such laws shall not be *ex post facto*, and shall not impair the obligations of a contract. *Railroad Co. v. Nesbit*, 10 How. 395, and cases cited; *Watson v. Mercer*, 8 Pet. 88, and cases cited.

The second contention is that the judgment must be reversed on the ground of misconduct of the jury in separating and each going his own way without the custody of the court at various times during the trial, and in returning a sealed verdict. On this point the record shows that the jury separated, but is silent as to whether such separation was by consent of the parties. A strong and somewhat exhaustive argument was made by appellant's attorney

36—2 WASH.

upon this point, urging that, in the absence of an affirmative showing of consent, no presumption of consent would attach; while, on the other hand, it was claimed by the attorney-general that, inasmuch as the statute allows the jury to separate with the consent of the parties, and the record shows that the court allowed them to separate, the presumption therefore is that the parties did consent. But it is not necessary for us to discuss this proposition. Section 278 of the Code of Washington provides the manner in which the question of misconduct of the jury shall be raised on motion for new trial, which is by affidavit. As this ground for new trial was not shown in the manner provided by the statute, it will not be considered by this court.

As to the sufficiency of the evidence, we think we would not be justified in interfering with the prerogative of the jury in this case to pass upon the weight of testimony. Competent testimony was introduced tending to show the commission of the crime charged by the defendant. The jury heard the testimony, saw the witnesses on the stand, noted their manner of testifying, listened to the testimony concerning the age and experience of the defendant and the tender age and want of experience of the female; the fact that she was under his own roof, and to a certain extent under his protection; that she was just merging into womanhood, and that she was at that critical age when judgment is weak and passion is strong, and when virtue falls an easy prey to the blandishments of the designing libertine—artifices and blandishments which, exercised upon a woman of more mature years, would fall harmless. All these things the jury had a right to take into consideration. They probably did take them into consideration, and, considering all the circumstances of the case, under the instructions of the court, they adjudged him guilty, and he must abide by their decision. Our statute of seduction has no reference

to the age.   All the qualification is that the woman shall be unmarried and of previously chaste character.

We find no substantial error in the instructions of the court or the admission of testimony, and the judgment of the lower court is affirmed.

STILES and HOYT, JJ., concur.

ANDERS, C. J. (*dissenting*). — It appears from the certified statement of facts in this case that the jury were told by the court, after the testimony was closed and the cause was finally submitted to them, that they might, in case they agreed upon a verdict during the night, seal the same, and deliver it to their foreman and bring it into court on the following morning, which the jury accordingly did.   The record fails to show that the defendant consented to this proceeding, and I am of the opinion that without his consent, which should affirmatively appear of record, the jury should not have been permitted thus to separate.   The contrary was the practice at common law, and the only change made by our statute is that permitting the jury to separate by consent of the defendant and the prosecuting attorney during the trial.   See Code, § 1089.   Section 1102 of the Code provides that " when the jury have agreed upon their verdict they must be conducted into court by the officer having them in charge.   Their names must then be called, and, if all appear, their verdict must be rendered in open court; and, if all do not appear, the rest must be discharged without giving a verdict, and the cause must be tried again at the same or next term."   This language, it seems to me, clearly implies that the jury must be kept in charge by the officer, and not be permitted to go at large until after the rendition of their verdict in open court.   See Proffatt, Jury Trial, § 451.

Upon the other questions involved in the case I concur in the opinion delivered by Mr. Justice DUNBAR.

SCOTT, J., concurs.

ON PETITION FOR REHEARING.

DUNBAR, J.— The petition for rehearing in this case is founded on the alleged imperfection of the transcript sent up to this court from the superior court, and the petition is to rehear on an amended record. The case was tried on the record brought here by the appellant. Had he suggested a diminution of the record when the case was before this court it would have ordered the record supplied; but public policy will not allow cases to be tried by piecemeal. It cannot allow an appellant to rest his case on certain points of the record, and if he fail, to try his case on another and different record.

ANDERS, C. J., STILES, HOYT, and SCOTT, JJ., concur.