Edward D. PUTTY, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 13778.

United States Court of Appeals,
Ninth Circuit.

March 10, 1955.

Finton J. Phelan, Jr., Agana, Guam, Thomas Jenkins, San Francisco, Cal., for appellant.

Herbert G. Homme, Jr., U. S. Atty., Agana, Guam, Robert H. Schnacke, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, and POPE, Circuit Judge, and HAMLIN, District Judge.

DENMAN, Chief Judge.

Putty appeals from a conviction for conspiracy and theft of federal property, based on an information filed by the prosecuting attorney. He urges as his

grounds of appeal (A) that he was tried on an information filed by the prosecuting attorney and was not granted the consideration of an impartial grand jury, and that at the time of the commission of the charged acts and at the time of his trial, Rules 7 and 6 of the Rules of Criminal Procedure, 18 U.S.C., made applicable by Congress to Guam, gave no power to its District Court to prosecute him except by indictment, unless waived—which it was not; (B) that the amendment of the Organic Act of Guam, enacted after Putty's commission of the charged acts, to make his conviction legal without an indictment is invalid as an ex post facto law; (C) that because the proceedings of his trial and conviction are void, the amendment is a bill of attainder; and (D) that the information fails in two counts to state an offense and as to two other counts, the evidence fails to support the convictions.

■ (A) *Putty's conviction on January 27, 1953, based on an information, was then without the power of the Guam District Court.*

Section 1424(b) of the Organic Act of Guam then provided, so far as pertinent, that

"The rules heretofore or hereafter promulgated and made effective by the Supreme Court of the United States pursuant to * * * sections 3771 and 3772 of Title 18, in criminal cases; * * * shall apply to the District Court of Guam and to appeals therefrom. Aug. 1, 1950, c. 512, § 22, 64 Stat. 389." 48 U.S.C.A. § 1424(b).

Rule 7 of the Code of Criminal Procedure required the prosecution of the crime charged against Putty to be initiated by indictment.[1] Rule 6 provided for a grand jury of not less than 16 nor more than 23 jurors.[2]

This court has held in two cases that Congress in making these rules applicable to the Territory of Guam, gave no power to its District Court to prosecute on a mere information one accused of a federal crime. In each the sentence was vacated and the information dismissed. One was a 28 U.S.C. § 2255 proceeding, Pugh v. United States, 9 Cir., 212 F.2d 761. The other, as here, was a direct appeal from the conviction, Hatchett v. Guam, 9 Cir., 212 F.2d 767. These cases hold that while the constitutional provision for a grand jury does not apply to such a territory as Guam, Congress had created that right for the Territory in making applicable there the criminal rules.

Certiorari was sought in our Hatchett case and we delayed action in the instant Putty case, which then was ready for hearing. The petition for certiorari was withdrawn, after Congress on August 17, 1954, had amended the Organic Act in a manner hereafter considered.

It is thus apparent that if we had decided the Putty appeal when it was ready for hearing, we would have held the District Court had no jurisdiction to prosecute and would have dismissed the information.

■ (B) *The amendment of the Organic Act of the unincorporated Territory of Guam, purporting to create in its District Court jurisdiction in the Putty and other similar cases by retroactively denying the right to indictment existing at the time the crime was committed, is invalid as an ex post facto law.*

1. "(a) Use of Indictment or Information. An offense which may be punished by death shall be prosecuted by indictment. An offense which may be punished by imprisonment for a term exceeding one year or at hard labor shall be prosecuted by indictment or, if indictment is waived, it may be prosecuted by information. Any other offense may be prosecuted by indictment or by information. An information may be filed without leave of court."

2. "(a) Summoning Grand Juries. The court shall order one or more grand juries to be summoned at such times as the public interest requires. The grand jury shall consist of not less than 16 nor more than 23 members. The court shall direct that a sufficient number of legally qualified persons be summoned to meet this reqirement."

The Constitution specifically creates power in Congress to legislate for a territory in Article IV, Section 3, as follows:

"The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States, or of any particular State."

The Supreme Court holds the power to legislate for such unincorporated territories as the Philippine Islands rests on this Article IV, Section 3. Hoover and Allison Co. v. Evatt, 324 U.S. 652, 673, 65 S.Ct. 870, 89 L.Ed. 1252.

■ Limiting all its legislative power over a territory, Congress is prohibited by Article I, Section 9, to enact an ex post facto law as follows: "No Bill of Attainder or ex post facto Law shall be passed."

In Dorr v. United States, 195 U.S. 138, 24 S.Ct. 808, 810, 49 L.Ed. 128, the Supreme Court, after holding that the Philippines were not then an incorporated territory of the United States, states that in governing such a territory Congress is restricted by the Constitution from passing an ex post facto law, quoting Mr. Justice Curtis' statement in Dred Scott v. Sanford, 19 How. 393, at page 614, 15 L.Ed. 691, that "'If, then, this clause [Art. IV, Sec. 3] does contain a power to legislate respecting the territory, what are the limits of that power?

"'To this I answer that, in common with all the other legislative powers of Congress, it finds limits in the express prohibitions on Congress not to do certain things; that, in the exercise of the legislative power, *Congress cannot pass an ex post facto law or bill of attainder;* and so in respect to each of the other prohibitions contained in the Constitution.'" (Emphasis supplied.)

So also in Downes v. Bidwell, 182 U.S. 244, 268, at pages 276, 277, 21 S.Ct. 770, at page 783, 45 L.Ed. 1088, the court, in discussing the laws applicable to the unincorporated Territory of Porto Rico stated:

"To sustain the judgment in the case under consideration it by no means becomes necessary to show that none of the articles of the Constitution apply to the island of Porto Rico. There is a clear distinction between such prohibitions as go to the very root of the power of Congress to act at all, irrespective of time or place, and such as are operative only 'throughout the United States' or among the several states.

"Thus, when the Constitution declares that 'no bill of attainder or *ex post facto* law shall be passed,' and that 'no title of nobility shall be granted by the United States,' it goes to the competency of Congress to pass a bill *of that description.*"

The statement regarding the limitation against ex post facto laws in unincorporated territories is repeated at page 292 of 182 U.S., 21 S.Ct. 770, in the concurring opinion of Mr. Justice White and at page 383 of 182 U.S., 21 S.Ct. 770, in the dissenting opinion of Mr. Justice Harlan.

The amendment of the Organic Act of Guam enacted August 27, 1954, provides:

"Public Law 679—Chapter 1017 H.R. 8634

"An Act to amend section 22 of the Organic Act of Guam.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That subsection (b) of section 22 of the Organic Act of Guam (64 Stat. 389), is amended by striking out the period at the end of such subsection and inserting in lieu thereof the following: '; except that no provisions of any such rules which authorize or require trial by jury or the prosecution of offenses by indictment by a

grand jury instead of by information shall be applicable to the District Court of Guam unless and until made so applicable by laws enacted by the Legislature of Guam, and except further that the terms "attorney for the government" and "United States attorney", as used in the Federal Rules of Criminal Procedure, shall, when applicable to cases arising under the laws of Guam, mean the Attorney General of Guam or such other person or persons as may be authorized by the laws of Guam to act therein.'

"Sec. 2. The amendment made by section 1 shall be deemed to be in effect as of August 1, 1950.

"Sec. 3. No conviction of a defendant in a criminal proceeding in the District Court of Guam heretofore had shall be reversed or set aside on the ground that the defendant was not indicted by a grand jury or tried by a petit jury." 68 Stat. 882.

This attempt by Congress to confer jurisdiction on the Guam District Court where it did not exist at the time of the commission of the crime is the deprivation of a substantial right of persons convicted of felonies in that court and not a mere minor matter. The vital contrast is clear between the proceeding on the information of the single prosecuting attorney and on the deliberate and detached judgment of at least 18 grand jurors in whose action at least 12 must concur.

In Kring v. State of Missouri, 107 U.S. 221, at page 232, 2 S.Ct. 443, 452, 27 L.Ed. 506, where the court was discussing what procedural rights are sufficiently substantial not to be taken away by ex post facto laws, it stated that the right to indictment by a grand jury was one of them, as follows:

"Can the law with regard to bail, *to indictments, to grand juries,* to the trial jury, all be changed to the disadvantage of the prisoner by State legislation after the offence was committed, and such legislation not held to be ex post facto *because it relates to procedure,* as it does according to Mr. Bishop?

"And can any *substantial right* which the law gave the defendant at the time to which his guilt relates be taken away from him by ex post facto legislation, because, in the use of a modern phrase, it is called a *law of procedure?* We think it cannot." (Emphasis supplied.)

In Beazell v. State of Ohio, 269 U.S. 167, at page 170, 46 S.Ct. 68, 69, 70 L.Ed. 216, in discussing those procedural changes which are so substantial that they cannot be affected by an ex post facto law, the court, referring to Kring v. Missouri, states:

"And there may be *procedural changes* which operate to deny to the accused *a defense available under the laws in force at the time of the commission of his offense,* or which otherwise affect him in such a harsh and arbitrary manner as to fall within the constitutional prohibition. Kring v. [State of] Missouri, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506; Thompson v. [State of] Utah, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061." (Emphasis supplied.)

The situation now in Guam is the same as it was in the unincorporated Territory of Porto Rico. There the fundamental constitutional rights did not apply but, as here, Congress created for an accused person, the procedural right to indictment by grand jury " 'in the same manner as a circuit court' of the United States". Certain grand jurors were disqualified and the Supreme Court, in Crowley v. United States, 194 U.S. 461, 24 S.Ct. 731, 734, 48 L.Ed. 1075, held the indictment "vitiated". In reversing it stated, 194 U.S. at page 474, 24 S.Ct. at page 736 that, where in a territory a Congressional statute requires qualified grand jurors and some are not, it "cannot be regarded as a mere defect or imperfection in form; *it is a matter of*

*substance, which cannot be disregarded without prejudice to an accused"*. A fortiori the entire absence of a grand jury is a substantial prejudice against Putty.

It was further contended in this Crowley case that though it was not proper procedure for the trial court to act without indictment "the indictment in question having been signed by the United States Attorney can be treated as an information". The court draws the obvious distinction between the function of the grand jury and that of the prosecuting attorney and held that

> " \* \* \* the positive command of the act of Congress relating to the district court of the United States for Porto Rico, that the court below 'shall proceed in the same manner as a circuit court' of the United States, precluded the prosecution of the accused in the latter court except by presentment or indictment."

In Thompson v. The State of Utah, 170 U.S. 343, 18 S.Ct. 620, 623, the court had under consideration a statute of Utah when a territory which provided that the procedure for the trial of felonies should be by a jury of 12 persons. Thompson committed the felony of stealing a calf and was tried under the applicable territorial statute by a jury of 12. A new trial was granted and thereafter Utah became a state. The state constitution provided for a jury of eight persons to try such a felony. Thompson was tried by a jury of eight and convicted. He contended that the state statute authorizing the trial procedure to be by eight jurors was an ex post facto law by which he was deprived of a substantial right.

In reversing the Supreme Court held that the statute was an ex post facto law because it deprived Thompson of a substantial right for a trial procedure with 12 jurors. The court considered the distinction between substantial and other rights and stated of the right so to be tried that it "belongs to that class which by its necessary operation and 'in its relation to the offense, or its consequences,

alters the situation of the accused to his disadvantage' ". What the Supreme Court says of the substantiality of the right of trial jury procedure of which cannot be deprived by an ex post facto law is equally applicable to grand jury procedure.

The distinction between substantial rights and those not substantial is discussed in the following cases. In Mallet v. State of North Carolina, 181 U.S. 589, 597, 21 S.Ct. 730, 733, 45 L.Ed. 1015, the court held that the change in the appellate court to which the convicted men could appeal was not an ex post facto law, inter alia because it "did not deprive the accused of any *substantial right or immunity* possessed by them at the time of the commission of the offense charged." (Emphasis supplied.) This statement was repeated in Malloy v. State of South Carolina, 237 U.S. 180, 184, 35 S.Ct. 507, 59 L.Ed. 905, where it was held that the change in the form of execution from hanging to the more merciful electrocution was not an ex post facto law because so ameliorating the punishment did not deprive him of a "substantial right." So also in Rooney v. State of North Dakota, 196 U.S. 319, 25 S.Ct. 264, 49 L.Ed. 494, where a subsequent statute of 1903, increasing the time of imprisonment before execution, was held not an ex post facto law, since it gave the condemned additional time to seek a parole or commutation of sentence. None of these cases question the decisions of Thompson v. Utah, Kring v. Missouri and Beazell v. Ohio, cited above.

In Hallock v. United States, 8 Cir., 185 F. 417, the Court of Appeals, with a strong dissent by District Judge Sanborn, held that the mere change in the total number of grand jurors from 16 to 19, is not an ex post facto law because such a change is not of a substantial character. This case has no bearing on the attempt ex post facto to make valid a conviction, where the right to indictment by a grand jury, existing when the crime was committed, is taken from the accused.

■ (C) *The amendment is a bill of attainder since it seeks to impose the penalty of imprisonment on a well defined group of persons, without any judicial trial by a court authorized to try them.*

The report of the Senate, No. 2006, states that the purpose of the above amendment is to provide that those persons in Guam who "have been proceeded against by way of information rather than by indictment * * * cannot use such fact for attack on their convictions by appeal or collaterally," under 28 U.S.C. § 2255.

The Supreme Court in Cummings v. State of Missouri, 4 Wall. 277, at page 323, 18 L.Ed. 356, defines a bill of attainder as "a legislative act which inflicts punishment without a judicial trial."

In the Cummings case, Missouri had enacted a statute under which Father Cummings was indicted, convicted, and fined for preaching and teaching as a priest without taking an oath required by the statute.[3]

That the Cummings case is still law is held in United States v. Lovett, 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252. There the court held to be a bill of attainder an act of Congress, § 304 of the Urgent Deficiency Appropriations Act of 1943, prohibiting the payment of salaries to certain government officials and prohibiting them from continuing in the government employment.

In so holding the court stated that neither the Cummings case nor the similar case of ex parte Garland, 4 Wall. 333, 18 L.Ed. 366, "has ever been overruled. They stand for the proposition that legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial are bills of attainder prohibited by the Constitution. Adherence to this principle requires invalidation of § 304. We do adhere to it."

Since in dismissing the information in the Pugh and Hatchett cases we have held the District Court of Guam to have no judicial power to have tried them, it is clear that the amendment's attempt to deny them any right to attack the judgments against them, is a bill of attainder. It would inflict imprisonment on them "without a judicial trial" and mark them as felons with subsequent denial of employment, etc.

We are not impressed with the contention urged in the Congressional Committee report that if the ex post facto provisions of the Amendment to the Guam Organic Act is not applied, a number of convicted men will be released from prison. A wrong done one person does not become rightful because it is done to several.

■ (D) *We are required to give consideration to the ex post facto and bill of attainder contentions, since the court found Putty guilty of two crimes on an information sufficiently charging the two offenses and is not a mere nullity.*

If the information had presented no adequate charge of a crime and, as a complete nullity presented nothing for the court's consideration this appeal should be decided on that ground and the determination of the constitutional questions avoided. Alma Motor Co. v. Timken-Detroit Axle Co., 329 U.S. 129, 67 S.Ct. 231, 91 L.Ed. 128. Putty's brief

3. The court, 4 Wall. at page 316 describes the oath as one denying "not only that he has ever 'been in armed hostility to the United States, or to the lawful authorities thereof', but, among other things, that he has ever, 'by act or word', manifested his adherence to the cause of the enemies of the United States, foreign or domestic, or his desire for their triumph over the arms of the United States, or his sympathy with those engaged in rebellion, or has ever harbored or aided any person engaged in guerrilla warfare against the loyal inhabitants of the United States, or has ever entered or left the State for the purpose of avoiding enrolment or draft in the military service of the United States; or to escape the performance of duty in the militia of the United States, has ever indicated, in any terms, his disaffection to the government of the United States in its contest with the Rebellion."

does not question that charges II and IV are sufficiently alleged and contends only that the evidence does not support the findings of guilt. We think the evidence does support the findings and hence are required to consider the question whether the court had jurisdiction to entertain Putty's prosecution.

Since the above holdings sufficiently establish that the conviction of Putty must be reversed, it is not necessary to consider other contentions of the parties.

The judgment is reversed and the information ordered dismissed.

POPE, Circuit Judge (concurring specially).

I agree that the judgment must be reversed and the information ordered dismissed. Of course Congress might have withdrawn from this Court all jurisdiction to entertain the appeal here, Ex Parte McCardle, 7 Wall. 506, 19 L.Ed. 264; National Exchange Bank of Baltimore v. Peters, 144 U.S. 570, 12 S.Ct. 767, 36 L.Ed. 545, but § 3 of the Act of August 27, 1954, quoted in Judge Denman's opinion, does not purport to do that. This Court still has jurisdiction to hear the appeal but under § 3 it cannot set aside the conviction on the ground there named;—we may hear the appeal but we may not reverse on the ground that defendant was not indicted by grand jury.

I agree that that provision is invalid either because Congress has "passed the limit which separates the legislative from the judicial power", under the rule of United States v. Klein, 13 Wall. 128, 147, 20 L.Ed. 519, or because, since the enactment operates to inflict punishment, it must be held to be a bill of attainder. I agree that the constitutional prohibition in Article I, § 9, Clause 3, relating to bills of attainder and ex post facto laws extends to the acts of Congress relating to the Island of Guam.

I do not express any opinion with respect to that part of Judge Denman's opinion in which he concludes that the amendment of the Organic Act of Guam is invalid as an ex post facto law. If hereafter Putty or some other person charged with the commission of an offense prior to the date of the amendatory enactment is prosecuted under the Amendatory Act it will be time enough to decide that question. It is a question not without difficulty but it is one upon which the Supreme Court has never expressed any opinion. Kring v. State of Missouri, 107 U.S. 221, 28 S.Ct. 443, upon which Judge Denman's opinion seems to lean most heavily, was a very different case upon its facts for there a perfect defense to the crime of murder in the first degree which existed at the time of the commission of the crime was taken away by the new law. In the course of its opinion the Supreme Court alluded to the proposition that the distinction between laws which are ex post facto and those which are not is not to be found at the line between substantive and adjective law and that retroactive laws may not escape the constitutional condemnation merely because they regulate procedure. The court referred to what is generally regarded as the best definition of an ex post facto law, that given by Mr. Justice Washington in his charge to the jury in United States v. Hall, 26 Fed. Cas., p. 84, No. 15,285, 2 Wash.C.C. 366. It said: "We are of opinion that any law passed after the commission of an offence which, in the language of Mr. Justice Washington, in United States v. Hall, 'in relation to that offence, or its consequences, alters the situation of a party to his disadvantage,' is an ex post facto law." [1]

The Supreme Court was merely stating what has never been questioned, namely, that the retroactive operation of a law may be ex post facto even al-

1. " * * * an ex post facto law is one which, in its operation, makes that criminal which was not so at the time the action was performed; or which increases the punishment, or, in short, which, in relation to the offence or its consequences, alters the situation of a party to his disadvantage." United States v. Hall, 26 Fed.Cas., p. 84, No. 15,285, 2 Wash.C.C. 366.

**480**

though it is in terms and in substance a law regulating procedure. What the Supreme Court said in the Kring case was that the test to be applied is whether a *substantial* right has been taken away, —the distinction lies in the difference between "substantial" and "unsubstantial" rights.

If and when it becomes necessary to pass upon that question it will be incumbent upon us to determine whether the previous right of a person in Guam to demand that prosecution should be upon a presentment or indictment of a grand jury is of such character that the substitution of prosecution by information operates, if applied retroactively, to deprive the accused of a substantial right within the meaning of the ex post facto clause as expounded in the decisions of the Supreme Court. For the determination of that question Kring v. Missouri furnishes no help. Some decisions of the Supreme Court furnish illustrations of instances in which the retroactive application of laws prescribing new procedures in criminal prosecutions have been held not violative of this clause.[2] Some retroactive changes in procedure have been stricken down as ex post facto laws.[3] But the effect of the retroactive change from prosecution by indictment to prosecution by information is something upon which the decisions of the Supreme Court furnish no light.

The Supreme Courts of a number of States have discussed this precise question with much learning and ability and have arrived at opposite conclusions. Among the cases upholding these retroactive enactments as not violative of the ex post facto prohibition are: Lybarger v. State, 1891, 2 Wash. 552, 27 P. 449; In Re Wright, 1891, 3 Wyo. 478, 27 P.

565, 13 L.R.A. 748; People v. Campbell, 1881, 59 Cal. 243. To the contrary are: State v. Kingsley, 1891, 10 Mont. 537, 26 P. 1066; Garnsey v. State, 1910, 4 Okl. Cr. 547, 112 P. 24, 38 L.R.A.,N.S., 600; State v. Rock, 1899, 20 Utah 38, 57 P. 532.

Since decision of this question is not necessary in the disposition of this case, I prefer to abide by the rule of most courts: never decide today what can be put off until tomorrow.

is difficult to reconcile on the facts with Kring v. Missouri, supra, Duncan v. State of Missouri, 152 U.S. 377, 14 S. Ct. 570, 38 L.Ed. 485; Gut v. State, 9 Wall. 35, 19 L.Ed. 573.

3. Thompson v. State of Missouri, 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204; American Publishing Co. v. Fisher, 166 U.S. 464, 17 S.Ct. 618, 41 L.Ed. 1079.

---

2. Beazell v. State of Ohio, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216; Gibson v. State of Mississippi, 162 U.S. 565, 16 S. Ct. 904, 40 L.Ed. 1075; Hopt v. People of Territory of Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262; Thompson v. State of Missouri, 171 U.S. 380, 18 S. Ct. 922, 43 L.Ed. 204; Mallett v. State of North Carolina, 181 U.S. 589, 21 S. Ct. 730, 45 L.Ed. 1015; this last case