No. 12,941.

THE STATE OF LOUISIANA vs. THEODULE ARDOIN.

SYLLABUS.

(1.) The Article 116 of the Constitution of 1898, substituting the concurrence of nine of the jury for the unanimity of the jury of twelve, required prior to the adoption of our Constitution to convict for crime, is *ex post facto* legislation in so far as it applies to offences committed prior to the Constitution of 1898, and in conflict with the provisions in the Constitution of the United States securing the trial by jury to all prosecuted for crime, and prohibiting *ex post facto* legislation by the States. Constitution U. S., Art. 1st, S. 10 ; 170 U. S. 343.

(2.) "*Stare decisis*" based on the decisions of this court of the question federal in its nature presented in this case, must yield to the determination of such a question by the United States Supreme Court vested with the power by the writ of error to compel conformance of the decisions of this court, with the jurisprudence settled by the higher tribunal. Constitution U. S., Art. 3rd Rev. Statutes, S. 709.

ON APPEAL from the Eleventh Judicial District Court for the Parish of St. Landry. *Dupre, J.*

*M. J. Cunningham,* Attorney General, and *R. Lee Garland,* District Attorney, (*E. P. Veazie,* of counsel) for Plaintiff and Appellee.

*E. B. Dubuisson* and *John N. Ogden* for Defendant and Appellant.

Argued and submitted January 14, 1899.
Opinion handed down January 23, 1899.

The opinion of the court was delivered by

MILLER, J.   The accused, convicted of burning a vacant dwelling, punishable with imprisonment at hard labor, takes this appeal from the sentence.

He assigns as error patent on the record, that the offence of which he was convicted, was committed prior to the adoption of the present Constitution, authorizing convictions on the concurrence of nine of the jury, that the constitutional provision in this respect as applied to offences before the Constitution was adopted, is *ex post facto* legislation, and hence the sentence based on the verdict concurred in by nine only of the jury that tried him cannot stand.   The argument is that when the offence was committed there could be no conviction without the concurrence of the jury of twelve, and that the Constitution of the State in dispensing with that unanimity, substituting the concurrence of nine only of the jury, violates the article of the Constitution of the United States prohibiting *ex post facto* legislation by the State.   If the change made by the Constitution in respect to convictions for crime, is to be deemed *ex post facto* in character when sought to be applied to the trial for offences committed prior to the adoption of the Constitution of the State, it is manifest the assignment must prevail.   Revised Statutes, Ss. 843, 976; Constitution of the State, Article 116; Constitution of the United States, Article 1, S. 9, section 3.

The definitions of the *ex post facto* law, as it is often found in the text books and decisions, that it is legislation constituting that a crime not an offence when the act was done; or that increases the punishment beyond that affixed to the act when committed; or that changes the rule of evidence by requiring a less degree of proof to acquit than necessary by the law when the offence occurred, do not exclude other

illustrations of *ex post facto* laws. Cooley's Constitutional Limitations, IXth Chapter, p. 33. In the recent exposition of the *ex post facto* law by the Supreme Court of the United States the question was whether a conviction for crime obtained in Utah based on the verdict of eight jurors, that being the number provided by the Constitution of that State, could be sustained in view of the fact that the offence was committed before the adoption of the Constitution and while Utah was a territory. In defining the *ex post facto* law the court thus expressed itself: "The crime when committed was punishable by the territory of Utah, proceeding in all its legislation in subordination to the authority of the United States. The court below substituted as the basis of its sentence the verdict of eight jurors in place of the unanimous verdict of twelve required to convict when the offence was committed. It cannot, therefore, be said that the Constitution of Utah did not deprive the accused of a substantial right, and did not materially alter the situation of the accused to his disadvantage." In another part of the opinion the court gives the approved definition of the *ex post facto* law thus: "Any statute which in its relation to the offence or its consequences, alters the situation of the accused to his disadvantage," and the court held that the provision under discussion in the Constitution of Utah was repugnant to the prohibition of *ex post facto* legislation. Thompson vs. Utah, 170 U. S. p. 343.

The change made by the Constitution of Utah was the provision of a jury of eight in courts of general jurisdiction except in capital cases, but required unanimity of the jury in rendering their verdict. Our Constitution, in so far as it bears on this controversy, provides for a jury of twelve in prosecutions for offences necessarily punishable with imprisonment at hard labor, but authorizes the verdict by nine concurring jurors. In the Utah case the verdict was found by the eight composing the jury. In this case the verdict found is by eleven jurors. In each case the conviction is by less than what the Supreme Court of the United States terms the "historical" Constitutional jury of twelve.

The distinction between legislative changes from time to time in methods of proceedure and *ex post facto* laws, is distinctly recognized in text books and decisions. Cooley's Constitutional Limitations, p. 264, Ch. 9th. On our first examination of this question we reached the conclusion that, our recent Constitution, introducing the concur-

rence of nine jurors, to convict, instead of the unanimous jury, kept within the limits of legislative control over legal procedure. State *ex rel* Sherburne vs. Judge, 50th Ann., not yet reported; State vs. Caldwell, 50th Ann. 670. Our predecessors held a like view in State vs. Carter, 33rd, Ann. p. 1214. When our decisions were made we were not aware of the recent decision of the Supreme Court of the United States.

We have had an elaborate argument on behalf of the State to maintain our own decisions, and in that connection it is urged that on the question presented, the decisions of the Supreme Court of the United States are not binding on this court. We should certainly follow our own decisions, if that of the Supreme Court of the United States did not, in our view, exert controlling influence. The argument supposes a distinction between the question in this case and that determined in the Utah case. In that case the offence was committed when Utah was a territory, and the trial occurred after the territory became a State. The decision maintained that the provisions of the Constitution of the United States guaranteeing the trial by jury, applied to prosecutions for crime in the territories as well as in the states, and held that the trial thus secured was by the "historical" jury of twelve. The Constitution of Utah, under which the accused was tried, in authorizing the conviction by a jury of eight, in the view of the court, deprived the accused of a substantial right, and hence was *ex post facto* legislation prohibited by the Constitution. Article 3rd S. 3, 6th Amendment; Thompson vs. Utah, 70 U. S. pp. 344-350. The same course of reasoning applies with equal, if not greater force in this case, in which both the offence and the trial occur in the State of Louisiana, subordinated in all its legislation to the provisions of Constitution of the United States, guaranteeing the right of trial by jury construed in Thompson vs. Utah, 170th U. S. 344, and it may be added, subordinated to that other limitation on the legislative power, both State and Federal, that no State shall pass any *ex post facto* law. Articles 1st, 9th and 10th. It is the conclusion of the United States Supreme Court that the substitution of the jury of eight for the jury of twelve is *ex post facto,* and we cannot maintain the view of our own in this respect, different from the deliberate judgment of the highest tribunal with the jurisdiction to review and reverse the decision of this court denying to the accused the right in the view of that tribunal, secured to him by the Constitution of the United States. Any weight we

might attach to *stare decisis* would avail nothing in a case presenting.
to the Supreme Court of the United States the denial of a right of the
nature under discussion. That court would feel itself bound to en-
force the protection of the federal Constitution, and the decision in
the Utah case gives us the interpretation of that tribunal. Revised
Statutes of the United States, S. 709. The argument supposes, too,.
that the provision in the Utah Constitution construed in 170th U. S.,.
differs from that of our Constitution under discussion. The differ-
ence is supposed to be in the fact that under the Constitution of Utah
a jury of eight only was provided, while our Constitution provides for
the jury of twelve, but authorizes the verdict by the concurrence of.
nine. It is claimed this gives the accused the chance of an acquittal
by nine. This chance of acquittal under the exposition of the Su-
preme Court of the United States, cannot be deemed to answer the
requirement there can be no conviction at all, unless by the verdict
of twelve, the only jury recognized in determining the question in this
case. All the other aspects discussed in the trial and argument for
the State had our attention. We think the decision of the Supreme
Court of the United States makes it imperative to hold that Article
116 of the Constitution cannot be applied to offences committed prior
to the adoption of that instrument.

It is therefore ordered, adjudged and decreed that the sentence of
the lower court be reversed and set aside and the accused held for
another trial according to the laws in force when the offence is
charged to have been committed and to abide the result of that trial.