# W. L. GARNSEY v. STATE.

No. A-157.   Opinion Filed December 1, 1910.

(112 Pac. 24.)

1.   INDICTMENT AND INFORMATION—Felonies Committed Before Statehood—Necessity of Prosecution by Indictment. Article 5 of the amendments to the Constitution of the United States, providing that "no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury," guarantees to a defendant charged with the commission of a felony in Oklahoma Territory, prior to statehood, an unalterable right to be accused by indictment only.

2.   SAME. In such cases the indictment is a necessary requisite to give the court jurisdiction, and without indictment the court has no jurisdiction to try.

3.   SAME—"Infamous Crime." A crime punishable by imprisonment for a term of years at hard labor is an "infamous crime," within the provision of the fifth amendment of the Constitution of the United States.

4.   CONSTITUTIONAL LAW—Prosecution by Indictment—Ex Post Facto Laws. The constitutional guaranty constitutes a substantial right under the laws of Congress and the laws of Oklahoma Territory, and any state law which operates as a denial of this right alters the situation of the accused to his disadvantage, and is therefore ex post facto as to such offense.

(Syllabus by the Court.)

*Appeal from District Court, Beaver County; R. H. Loofbourrow, Judge.*

W. L. Garnsey was convicted of rape, and he appeals. Reversed and remanded.

*Harris & Wilson* and *Claude Nowlin,* for plaintiff in error.
*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State,

DOYLE, JUDGE. W. L. Garnsey (hereinafter designated defendant) was prosecuted for the crime of rape, alleged to have been committed in Beaver county, territory of Oklahoma on the

20th day of April, 1907. On May 4, 1907, an information charging the crime of rape was filed before a justice of the peace. Defendant was arrested, waived examination, and was bound over to await the action of the district court. On February 29, 1908, no grand jury action having been taken thereon, the county attorney filed a duly verified information in the district court of Beaver county, charging defendant with the crime of rape. Defendant filed a general demurrer to said information, which demurrer was overruled and exception allowed. On this information defendant was tried and found guilty of the crime of rape, and on the 20th day of March, 1909, was by the court sentenced to imprisonment for five years at hard labor in the state penitentiary. From this judgment and sentence defendant perfected an appeal by filing with the clerk of this court on May 4, 1909, his petition in error with a duly certified transcript of the record attached thereto, together with proof of service of notices of appeal.

Counsel for defendant contend that:

"The district court of Beaver county, state of Oklahoma, erred in permitting the prosecution of the plaintiff in error upon the charge of having committed a felony in the territory of Oklahoma, prior to the adoption of the Constitution of the state of Oklahoma, upon information of any kind, and without an indictment duly returned by the grand jury of said county."

On June 8, 1910, on the part of the state, there was filed a confession of error, which concludes as follows:

"The Attorney General concurs with the contention of counsel for defendant that the district court of Beaver county was without jurisdiction to proceed to the trial of defendant for the crime charged by information, and therefore, in view of the decisions of this honorable court in the cases above cited (*Reed v. State,* 2 Okla. Cr. 589, 103 Pac. 1042; *Hayes v. State,* 3 Okla. Cr. 1, 103 Pac. 1061), confesses that this cause should be reversed and the same remanded to the district court of Beaver county, there to be proceeded with in accordance to law."

The only question which the record presents is: Can the state proceed by information against a person charged with the commission of a felony before statehood, or must the proceedings

in such cases be by indictment? Otherwise stated: Is the provision of the state Constitution which provides for the prosecution of felonies by information *ex post facto* as to offenses committed prior to statehood? This question has not been directly passed upon by this court. As it is involved in several pending causes, we will here state our views.

The offense is alleged to have been committed prior to statehood, in that part of the territory of Oklahoma which was formerly a part of the republic of Texas; however, a greater portion of the area now constituting the state of Oklahoma was included within the province of Louisiana.

Article 3 of the treaty ceding Louisiana to the United States provided that:

"The inhabitants of the ceded territory shall be incorporated in the union of the United States, and admitted as soon as possible, according to the principles of the federal Constitution, to the enjoyment of all the rights, advantages and immunities of citizens of the United States." (8 Stat. 200.)

The fifth article of the amendments to the Constitution of the United States provides that:

"No person shall be held to answer for a capital, or otherwise, infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger."

The federal and state courts, without diversity of opinion, have uniformly held that the provisions of the Constitution of the United States do not apply to criminal prosecutions under state laws, except in cases where the states are named. The authorities have been reviewed by this court in the case of *In re McNaught,* 1 Okla. Cr. 528, 99 Pac. 241, and need no further discussion here.

The Constitution of Oklahoma, by the enabling act, as well as by its own provisions, did not become operative until the President's proclamation of November 16, 1907. This was more than six months later than the time alleged in the information of the commission of the crime charged. It has been uniformly held by federal courts that the provisions of the Constitution of the United

States apply to all criminal prosecutions in the organized territories.

In the case of *Rassmussen v. United States,* 197 U. S. 516, 25 Sup. Ct. 514, 49 L. Ed. 862, Mr. Justice White, who delivered the opinion of the court, fully reviewing the authorities, in part said:

"This brings us to the second proposition, which is   *   *   *   2. That even if Alaska was incorporated into the United States, as it was not an organized territory, therefore, the provisions of the sixth amendment were not controlling on Congress when legislating for Alaska. We do not stop to demonstrate from original considerations the unsoundness of this contention and its irreconcilable conflict with the essential principles upon which our constitutional system of government rests. Nor do we think it is required to point out the inconsistency which would arise between various provisions of the Constitution if the proposition was admitted or the extreme extension, on the one hand, and the undue limitation on the other, of the powers of Congress which would be occasioned by conceding it. This is said, because, in our opinion, the unsoundness of the proposition is conclusively established by a long line of decisions. *Webster v. Reid,* 11 How. 437, 13 L. Ed. 761; *Reynolds v. United States,* 98 U. S. 145, 25 L. Ed. 244; *Callan v. Wilson,* 127 U. S. 540, 8 Sup. Ct. 1301, 32 L. Ed. 223; *American Publishing Co. v. Fisher,* 166 U. S. 464, 17 Sup Ct. 618, 41 L. Ed. 1079; *Springville v. Thomas,* 166 U. S. 707, 17 Sup. Ct. 717, 41 L. Ed. 1172; *Thompson v. Utah,* 170 U. S. 343, 18 Sup. Ct. 620, 42 L. Ed. 1061; *Capital Traction Co. v. Hof,* 174 U. S. 1, 19 Sup. Ct. 580, 43 L. Ed. 873; *Black v. Jackson,* 177 U. S. 349, 20 Sup. Ct. 648, 44 L. Ed. 801. The argument by which the decisive force of the cases just cited is sought to be escaped is that as when the cases were decided there was legislation of Congress extending the Constitution to the District of Columbia or to the particular territory to which a case may have related, therefore, the decisions must be taken to have proceeded alone upon the statutes, and not upon the inherent application of the provisions of the fifth, sixth and seventh amendments to the District of Columbia or to an incorporated territory. And, upon the assumption that the cases are distinguishable from the present one upon the basis just stated, the argument proceeds to insist that the sixth amendment does not apply to the territory of Alaska, because section 1891 of the Revised Statutes only extends the Constitution to the organized territories, in which, it is urged, Alaska is not em-

braced.    Whilst the premise as to the existence of legislation de-
claring the extension of the Constitution to the territories with
which the cases were respectively concerned is well founded, the
conclusion drawn from that fact is not justified.    Without attempt-
ing to examine in detail the opinions in the various cases, in our
judgment it clearly results from them that they substantially rested
upon the proposition that where territory was a part of the United
States the inhabitants thereof were entitled to the guaranties of the
fifth, sixth and seventh amendments, and that the act or acts of
Congress purporting to extend the Constitution were considered as
declaratory merely of a result which existed independently by the
inherent operation of the Constitution.    It is true that in some of
the opinions both the application of the Constitution and the statu-
tory provisions declaring such application were referred to, but in
others no reference to such statutes was made, and the cases pro-
ceeded upon a line of reasoning leaving room for no other view
than that the conclusion of the court was rested upon the self-
operative application of the Constitution.    *Springville v. Thomas*,
166, U. S. 707, 17 Sup. Ct. 717, 41 L. Ed. 1172; *Thompson v.
Utah*, 170 U. S. 343, 18 Sup. Ct. 620, 42 L. Ed. 1061; *Capital
Traction Co. v. Hof*, 174 U. S. 1, 19 Sup. Ct. 580, 43 L. Ed. 873;
*Black v. Jackson*, 177 U. S. 349, 20 Sup. Ct. 648, 44 L. Ed. 801.
And this result of the cases will be made clear by a brief reference
to some of the opinions.    In *Thompson v. Utah*, considering a law
of the state of Utah, which provided that a jury in a criminal
cause should consist of only eight persons, the statute was held to
be *ex post facto* and void in its application to felonies committed
before the territory became a state, 'because, in respect of such
crimes, the Constitution of the United States gave the accused, at
the time of the commission of his offense, the right to be tried by a
jury of twelve persons, and made it impossible to deprive him of
his liberty except by the unanimous verdict of such a jury.'    In
*Springville v. Thomas,* it was contended that the territorial Legis-
lature of Utah was empowered by Congress, in the organic act of
the territory, to dispense with unanimity of the jurors in render-
ing a verdict in a civil case.    The court said (at page 708 of 166
U. S., at page 718 of 17 Sup. Ct. [41 L. Ed. 1172]) :   'In our opin-·
ion the seventh amendment secured unanimity in finding a verdict
as an essential feature of trial by jury in common law cases, and
the act of Congress could not impart the power to change the con-
stitutional rule, and could not be treated as attempting to do so."

Again, in *Capital Traction Co. v. Hof*, 174 U. S. 1, 5, 19 Sup. Ct. 580, 582 [43 L. Ed. 873], no reference whatever being made to the statute of February 21, 1871, extending the provisions of the Constitution to the District of Columbia (chapter 62, 16 Stat. 419) it was declared: 'It is beyond doubt, at the present day, that the provisions of the Constitution of the United States securing the right of trial by jury, whether in civil or criminal cases, are applicable to the District of Columbia.' And in *Black v. Jackson*, 177 U. S. 349, 363, 20 Sup. Ct. 648, 653 [44 L. Ed. 801] speaking of a law of the territory of Oklahoma, it was said: 'And it also fails to recognize the provisions of the seventh amendment securing the right of trial by jury in "suits at common law," where the value in controversy exceeds $20. That amendment, so far as it secures the right of trial by jury, applies to judicial proceedings in the territories of the United States. *Websler v. Reid*, 11 How. 437, 460 [13 L. Ed. 761]; *American Publishing Co. v. Fisher*, 166 U. S. 464, 466 [17 Sup. Ct. 618, 41 L. Ed. 1079]; *Springville v. Thomas*, 166 U. S. 707 [17 Sup. Ct. 717, 41 L. Ed. 1172]. So that a court of a territory authorized, as Oklahoma was, to pass laws not inconsistent with the Constitution of the United States (Act May 2, 1890, 26 Stat. 81, 84, c. 182, § 6), could not proceed in a "common-law" action as if it were a suit in equity and determine by mandatory injunction rights for the protection or enforcement of which there was a plain and adequate remedy at law, according to the established distinctions between law and equity.' As it conclusively results from the foregoing considerations that the sixth amendment to the Constitution was applicable to Alaska, and, as of course being applicable, it was controlling upon Congress in legislating for Alaska, it follows that the provision of the act of Congress under consideration, depriving persons accused of a misdemeanor in Alaska of a right to trial by a common-law jury, was repugnant to the Constitution and void."

Mr. Justice Harlan, concurring, in part said:

"No tribunal or person can exercise authority involving life or liberty, in any territory of the United States, organized or unorganized, except in harmony with the Constitution. Congress cannot suspend the operation of the Constitution in any territory after it has come under the sovereign authority of the United States, nor, by any affirmative enactment, or by mere nonaction, can Congress prevent the Constitution from being the supreme law for any peoples subject to the jurisdiction

of the United States. The power conferred upon Congress to make needful rules and regulations respecting the territories of the United States does not authorize Congress to make any rule or regulation inconsistent with the Constitution or violative of any right secured by that instrument. The proposition that a people subject to the full authority of the United States for purposes of government, may, under any circumstances, or for any period of time, long or short, be governed, as Congress pleases to ordain, without regard to the Constitution, is, in my judgment, inconsistent with the whole theory of our institutions. If the Constitution does not become the supreme law in a territory acquired by treaty, and whose inhabitants are under the dominion of the United States, until Congress, in some distinct form, shall have expressed its will to that effect, it would necessarily follow that, by positive enactment, or simply by nonaction, Congress, under the theory of 'incorporation,' and although a mere creature of the Constitution, could forever withhold from the inhabitants of such territory the benefit of the guaranties of life, liberty, and property as set forth in the Constitution. I cannot assent to any such doctrine. I cannot agree that the supremacy of the Constitution depends upon the will of Congress. As these are my views upon the underlying questions presented by the record, I cannot concur in all the reasoning in the opinion of the court. But I entirely concur in the judgment holding the act of Congress in question to be void. I do so, not upon the ground that Alaska had been previously 'incorporated' into the United States by the legislation of Congress, but upon the ground that the right of the accused to a trial by the jury of the Constitution became complete immediately upon the acquisition of Alaska by treaty, and before any legislation upon the subject by Congress—indeed, without any power in Congress to add to or impair or destroy that right."

Mr. Justice Brown, concurring, in part said:

"I am disposed to concur in the conclusion of the court upon the ground that, by the treaty of cession with Russia, it was provided that the inhabitants of the ceded Territory shall be admitted to enjoy all the rights, advantages, and immunities of citizens of the United States."

As the statute authorized, the court pronounced a sentence of five years' confinement at hard labor in the state penitentiary.

There can be no question but what defendant was charged with an infamous crime. *Ex parte Wilson,* 114 U. S. 426, 5 Sup. Ct. 935, 29 L. Ed. 89; *Mackin v. United States,* 117 U. S. 352, 6 Sup. Ct. 777, 29 L. Ed. 909; *U. S. v. De Walt,* 128 U. S. 393, 9 Sup. Ct. 111, 32 L. Ed. 485.

In *Ex parte Wilson, supra,* Mr. Justice Gray, after reviewing the history of the proposal, and adoption of this provision of the Constitution, used this language:

"The question is whether the crime is one for which the statutes authorize the court to award an infamous punishment; not whether the punishment ultimately awarded is an infamous one. When the accused is in danger of being subjected to an infamous punishment, if convicted, he has the right to insist that he shall not be put upon his trial except on the accusation of a grand jury. Nor can we accede to the proposition which has been sometimes maintained, that no crime is infamous, within the meaning of the fifth amendment, that has not been so declared by Congress. * * * For more than a century imprisonment at hard labor in the state prison or penitentiary, or other similar institution, has been considered an infamous punishment in England and America."

The laws of Oklahoma Territory provided (chapter 68, art. 6, par. 168 [section 5304] Wilson's Rev. & Ann. St. 1903) that "Every felony must be prosecuted by indictment in the district court." The Enabling Act (Act June 16, 1906, c. 335, 34 Stat. 277) provides:

"Section 21. * * * All laws in force in the territory of Oklahoma at the time of the admission of said state into the Union shall be in force throughout said state, except as modified or changed by this act or by the Constitution of the state. * * *"

Section 20, as amended March 4, 1907 (Act March 4, 1907, c. 2911, § 3, 34 Stat. 1287):

" * * * All criminal cases pending in the United States courts in the Indian Territory, not transferred to the United States circuit or district courts in the state of Oklahoma, shall be prosecuted to a final determination in the state courts of Oklahoma under the laws now in force in that territory."

Section 1 of the Schedule of the Constitution provides:

"No existing rights, actions, suits, proceedings, contracts or claims shall be affected by the change in the form of government, but all shall continue as if no change in the form of government had taken place."

These provisions of the Enabling Act and the Schedule preserve the rights of persons who are charged with the commission of offenses prior to the admission of the state, and render them liable to punishment under the law.

For this reason we are clearly of opinion that the constitutional provision providing for the prosecution of felonies by information was not intended to be retrospective or retroactive in its operation, and has reference only to prosecutions for crimes committed after statehood. However it is immaterial whether the Enabling Act permitted, or the framers of our Constitution intended to provide, a new method for the prosecution of crimes committed before statehood, because in respect to such crimes the Constitution of the United States gave to the accused an unalterable right to be accused by indictment only, and this provision of our state Constitution is *ex post facto* in its application to felonies committed before Oklahoma was admitted as a state. The Constitution of the United States (section 9, pars. 3 and 10 of art. 1) prohibits the passing of *ex post facto* laws.

The courts of several states have held that under the particular provisions of their state Constitutions the right to substitute prosecutions by information in place of prosecutions by indictment was within the limits of the legislative control over legal procedure and did not thereby disparage any substantial right or constitutional guaranty. *State v. Kyle,* 166 Mo. 287, 65 S. W. 763, 56 L. R. A. 115; *Lybarger v. State,* 2 Wash. St. 552, 27 Pac. 449, 1029; *In re Wright,* 3 Wyo. 478, 27 Pac. 565, 13 L. R. A. 748, 31 Am. St. Rep. 94, and cases there cited. Those cases are clearly distinguished from cases where the crime was committed before the admission of the state into the Union.

The distinction between legislative changes from time to time in methods of procedure and *ex post facto* laws is distinctly recognized in text-books and decisions.

In the case of *Thompson v. State of Utah,* 170 U. S. 343, 18 Sup. Ct. 620, 42 L. Ed. 1061, Mr. Justice Harlan, delivering the opinion of the court, used this language:

"It is not necessary to review the numerous cases in which the courts have determined whether particular statutes come within the constitutional prohibition of *ex post facto* laws. It is sufficient now to say that a statute belongs to that class which by its necessary operation and 'in its relation to the offense, or its consequences, alters the situation of the accused to his disadvantage.' *U. S. v. Hall,* 2 Wash. C. C. 366, Fed. Cas. No. 15,285; *Kring v. Missouri,* 107 U. S. 221, 228, 2 Sup. Ct. 443 [27 L. Ed. 506]; *In re Medley,* 134 U. S. 160, 171, 10 Sup. Ct. 384 [33 L. Ed. 835]. Of course, a statute is not of that class unless it materially impairs the right of the accused to have the question of his guilt determined according to the law as it was then when the offense was committed. And, therefore, it is well settled that the accused is not entitled of right to be tried in the exact mode, in all respects, that may be prescribed for the trial of criminal cases at the time of the commission of the offense charged against him. Cooley, in his treatise on Constitutional Limitations, after referring to some of the adjudged cases relating to *ex post facto* laws, says: 'But, so far as mere modes of procedure are concerned, a party has no more right in a criminal than in a civil action to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place. Remedies must always be under the control of the Legislature, and it would create endless confusion in legal proceedings if every case was to be conducted only in accordance with the rules of practice and heard only by the courts in existence when its facts arose. The Legislature may abolish courts and create new ones, and it may prescribe altogether different modes of procedure in its discretion, though it cannot lawfully, we think, in so doing, dispense with any of those substantial protections with which the existing law surrounds the person accused of crime.' Chapter 9, *272. And this view was substantially approved by this court in *Kring v. Missouri,* above cited. So, in *Hopt v. Utah,* 110 U. S. 574, 590, 4 Sup. Ct. 202 [28 L. Ed. 262], it was said that no one had a vested right in mere modes of procedure, and that it was for the state, upon grounds of public policy, to regulate procedure at its pleasure. This court, in *Duncan v. Missouri,* 152 U. S. 378, 382, 14 Sup. Ct. 570 [38 L. Ed. 485], said that statutes regulat-

ing procedure, if they leave untouched all the substantial protections with which existing law surrounds the person accused of crime, are not within the constitutional inhibition of *ex post facto* laws. But it was held in *Hopt v. Utah,* above cited, that a statute that takes from the accused a substantial right given to him by the law in force at the time to which his guilt relates would be *ex post facto* in its nature and operation, and that legislation of that kind cannot be sustained simply because, in a general sense, it may be said to regulate procedure. The difficulty is not so much as to the soundness of the general rule that an accused has no vested right in particular modes of procedure as in determining whether particular statutes by their operation take from an accused any right that was regarded, at the time of the adoption of the Constitution, as vital for the protection of life and liberty, and which he enjoyed at the time of the commission of the offense charged against him. Now Thompson's crime, when committed, was punishable by the territory of Utah proceeding in all its legislation under the sanction of and in subordination to the authority of the United States. The court below substituted, as a basis of judgment and sentence to imprisonment in the penitentiary, the unanimous verdict of 8 jurors in place of a unanimous verdict of 12. It cannot, therefore, be said that the Constitution of Utah, when applied to Thompson's case, did not deprive him of a substantial right involved in his liberty, and did not materially alter the situation to his disadvantage. If, in respect to felonies committed in Utah while it was a territory, it was competent for the state to prescribe a jury of eight persons, it could just as well have prescribed a jury of four or two, and, perhaps have dispensed altogether with a jury and provided for a trial before a single judge."

That the right to be exempt from prosecution for an infamous crime, except upon presentment by a grand jury, is of the same nature as the right to a trial by a petit jury of the number fixed by the common law, has been held by the Supreme Court of the United States, in the case of *Maxwell v. Dow*, 176 U. S. 582, 20 Sup. Ct. 448, 494, 44 L. Ed. 597. Mr. Justice Peckham, who delivered the opinion of the court, used this language:

"In our opinion the right to be exempt from prosecution for an infamous crime, except upon a presentment by a grand jury, is of the same nature as the right to a petit jury of the number

fixed by the common law. * * * The right to be proceeded against only by indictment, and the right to a trial by 12 jurors, are of the same nature, and are subject to the same judgment, and the people in the several states have the same right to provide by their organic law for the change of both or either."

In *Ex parte Bain,* 121 U. S. 1, 7 Sup. Ct. 781, 30 L. Ed. 849, Mr. Justice Miller reviews the fifth amendment to the Constitution of the United States, and considers the nature and value of the institution of the grand jury:

"The importance of the part played by the grand jury in England cannot be better illustrated than by the language of Justice Field, in a *Charge to a Grand Jury,* reported in 2 Sawy. (U. S.) 667 [Fed. Cas. No. 18,255] : 'The institution of the grand jury,' he says, 'is of very ancient order in the history of England —it goes back many centuries. For a long period its powers were not clearly defined; and it would seem from the accounts of commentators on the laws of that country, that it was first a body which not only accused, but which also tried, public offenders. However this may have been in its origin, it was, at the time of the settlement of this country, an informing and accusing tribunal only, without whose previous action no person charged with a felony could, except in certain special cases, be put upon his trial. And in the struggles which at times arose in England between the powers of the king and the rights of the subject, it often stood as a barrier against prosecution in his name; until, at length, it came to be regarded as an institution by which the subject was rendered secure against oppression from unfounded prosecutions of the crown. In this country, from the popular character of our institutions, there has seldom been any contest between the government and the citizen which required the existence of the grand jury as a protection against oppressive action of the government. Yet the institution was adopted in this country, and is continued from considerations similar to those which give to it its chief value in England, and is designed as a means, not only of bringing to trial persons accused of public offenses upon just grounds, but also as a means of protecting the citizen against unfounded accusation, whether it comes from government, or be prompted by partisan passion or private enmity. No person shall be required, according to the fundamental law of the country, except in the cases mentioned, to answer for any of the higher crimes unless this body, consisting of not less than 16 nor more than 23 good

and lawful men, selected from the body of the district, shall declare upon careful deliberation, under the solemnity of an oath, that there is good reason for his accusation and trial.' The case of *Hurtado v. People,* 110 U. S. 516, 4 Sup. Ct. 111 [292, 28 L. Ed. 232], was a writ of error to the Supreme Court of that state (California) by a party who had been convicted of the crime of murder, in the state court, upon an information instead of an indictment. The writ of error from this court was founded on the proposition that the provision of the fourteenth amendment to the Constitution of the United States, that no state shall 'deprive any person of life, liberty, or property without due process of law,' required an indictment as necessary to due process of law. This court held otherwise, and that it was within the power of the states to provide punishment of all manner of crimes without indictment by a grand jury. The nature and value of a grand jury, both in this country and in the English system of law, were much discussed in that case, with reference to Coke, Magna Charta, and to other sources of information on that subject, both in the opinion of the court and in an exhaustive review of that question by Mr. Justice Harlan in a dissenting opinion. It has been said that since there is no danger to the citizen from the oppressions of a monarch, or of any form of executive power, there is no longer need of a grand jury. But, whatever force may be given to this argument, it remains true that the grand jury is as valuable as ever in securing, in the language of Chief Justice Shaw in the case of *Jones v. Robbins,* 8 Gray (Mass.) 329, 'individual citizens from an open and public accusation of crime, and from the trouble, expense, and anxiety of a public trial, before a probable cause is established by the presentment and indictment of such a jury; and in case of high offenses it is justly regarded as one of the securities to the innocent against hasty, malicious, and oppressive public prosecutors.' It is never to be forgotten that in the construction of the language of the Constitution here relied on, as, indeed, in all other instances where construction becomes necessary, we are to place ourselves as nearly as possible in the condition of the men who framed that instrument. Undoubtedly the framers of this article had for a long time been absorbed in considering the arbitrary encroachments of the crown on the liberty of the subject, and were imbued with the common-law estimate of the value of the grand jury as part of its system of criminal jurisprudence. They therefore must be understood to

have used the language which they did in declaring that no person should be called to answer for any capital or otherwise infamous crime, except upon an indictment or presentment of a grand jury, in the full sense of its necessity and of its value. We are of the opinion that an indictment found by a grand jury was indispensable to the power of the court to try the petitioner for the crime with which he was charged. The sentence of the court was that he should be imprisoned in the penitentiary at Albany. The case of *Ex parte Wilson*, 114 U. S. 418, 5 Sup. Ct. 935 [29 L. Ed. 89], and the later one of *Mackin v. United States*, 117 U. S. 348, 6 Sup. Ct. 777 [29 L. Ed. 909], established the proposition that this prosecution was for an infamous crime within the meaning of the constitutional provision. It only remains to consider whether this change in the indictment deprived the court of the power of proceeding to try the petitioner and sentence him to the imprisonment provided for in the statute. We have no difficulty in holding that the indictment on which he was tried was no indictment of a grand jury. The decisions which we have already referred to, as well as sound principle, require us to hold that after the indictment was changed it was no longer the indictment of the grand jury who presented it. Any other doctrine would place the rights of the citizen, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney; for, if it be once held that changes can be made by the consent or the order of the court in the body of the indictment as presented by the grand jury, and the prisoner can be called upon to answer to the indictment as thus changed, the restriction which the Constitution places upon the power of the court, in regard to the prerequisite to an indictment in reality no longer exists. It is of no avail, under such circumstances, to say that the court has jurisdiction of the person and of the crime, for, though it has possession of the person, and would have jurisdiction of the crime if it were properly presented by indictment, the jurisdiction of the offense is gone, and the court has no right to proceed any further in the progress of the case for want of an indictment. If there is nothing before the court which the prisoner, in the language of the Constitution, can be 'held to answer,' he is then entitled to be discharged so far as the offense originally presented to the court by the indictment is concerned. The power of the court to proceed to try the prisoner is as much arrested as if an

indictment had been dismissed or a *nolle prosequi* had been entered. There was nothing before the court on which it could hear evidence or pronounce sentence."

The Supreme Court of Utah, after the decision of the Supreme Court of the United States in *Thompson v. Utah, supra,* held, in the case of *State v. Rock,* 20 Utah, 38, 57 Pac. 532, that:

"As to all offenses committed against the laws of Utah prior to its admission as a state, section 4688, Rev. St. 1898, alters the situation of a party charged with an offense committed prior to statehood to his disadvantage, and is an *ex post facto* law. A person charged with having committed an offense prior to statehood had a constitutional right, under the laws of Congress and the territorial laws then in effect, to be prosecuted only upon indictment presented by a grand jury, and he may not be prosecuted by way of information."

Justice Miner, delivering the opinion of the court, used this language:

"To hold that a state could deprive the accused of his liberty by examination before a magistrate, and by the filing of an information by the prosecuting attorney, without the presentment of an indictment found by a grand jury, for an offense committed while Utah was a territory, and under the laws of Congress, would be to recognize in a state power to do that which Congress could not do by legislation, and the right to take from the accused a constitutional right which belonged to him when the offense was committed. * * * Under the decision of *Thompson v. Utah, supra,* it must follow that the prosecuting attorney had no authority to file the information against the respondent for the offense committed prior to the admission of the state into the Union. The grand jury is the proper tribunal before whom the accused should be brought."

In *McCarty v. State,* 1 Wash. St. 377, 25 Pac. 299, 22 Am. St. Rep. 152, it was held:

"One charged with a larceny in Washington Territory, prior to its admission as a state, is entitled under the Constitution of the United States to a presentment by a grand jury, and cannot be prosecuted by information under the authority of the Constitution of Washington and the act of January 29, 1890, in pursuance thereof, since the substitution of prosecution by informa-

4 Cr.—36

tion for that by indictment was not a mere change of procedure, but affected a substantial. right, which could not be taken away by retroactive legislation."

See, also, *State v. Kingsley,* 10 Mont. 537, 26 Pac. 1066; *State v. Ardoin,* 51 La. Ann. 169, 24 South. 802, 72 Am. St. Rep. 454.

In *Miller v. State,* 3 Okla. Cr. 457, 106 Pac. 810, this court held that:

"In determining questions of federal cognizance, this court is bound to enforce the protection of the federal Constitution and to adopt and be governed by the rule of decision adjudicated in the Supreme Court of the United States."

Applying the principles of the foregoing authorities to the question presented, we believe they establish our conclusion, that the state cannot proceed by information against a person charged with the commission of a felony in the territory of Oklahoma before statehood. It may be that in a popular government the grand jury is not as important as it is when used to protect the citizen from the tyranny and oppression of kings, and that it is no longer considered one of the "greatest bulwarks of liberty." That a preliminary examination gives to the accused all the protection, and even more than he would have had from a grand jury, is a plausible argument that meets popular favor. Nevertheless, experience has shown that even in popular governments the rights and privileges of the citizen may be. ruthlessly invaded, as shown by the conditions that led to the adoption of the fifth article of the amendments to the Constitution of the United States. The framers of our state Constitution provided that: "The Legislature may make the calling of a grand jury compulsory." Section 18, Bill of Rights. It may be, in the interest of good government, that the trial of offenses by indictment should be dispensed with; however, whether or not it is wise. so to do is a question which is addressed to the people, and not to the courts.

The courts of this state; in exercising the jurisdiction conferred upon them by the Enabling Act and the state Constitution over crimes committed in Oklahoma Territory, cannot deprive

the accused of substantial rights secured to him by the Constitution of the United States, such as depriving him of the right to be accused by indictment for an infamous crime, or the right to be tried by a common-law jury. The constitutional guaranty is a substantial right given by the law in force at the time the crime charged is alleged to have been committed, and any law which operates as a denial of this right alters the situation of the accused to his disadvantage, and is therefore *ex post facto* as to such crime.

Adopting the language of Judge Denio, in *Hartung v. People,* 22 N. Y. 95:

"No one can be criminally punished in this country except according to law prescribed for his government by the sovereign authority before the imputed offense was committed, and which existed as a law at the time."

A formal accusation is essential to every trial for crime. And, where the law requires a particular form of accusation, that form of accusation is essential. Without it the court acquires no jurisdiction to proceed. In the language of the Supreme Court of Massachusetts:

"Though it is desirable that all offenders against our penal laws should be punished, yet it is better that one should occasionally escape than that the fundamental principles of the criminal law should be violated." (*Com. v. McDonough,* 13 Allen, 581.)

We are of opinion that the district court of Beaver county did not, upon the case shown by the record, have jurisdiction to try, convict, and sentence defendant for a crime charged to have been committed in Oklahoma Territory.

The judgment is reversed, and the cause remanded.

FURMAN, PRESIDING JUDGE, and RICHARDSON, JUDGE, concur.